UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOUSAND ISLAND
PARK CORPORATION,

                              Plaintiff,

            -v-                                          5:18-CV-117

MARK A. WELSER,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                               OF COUNSEL:

PHILLIPS LYTLE LLP                         EDWARD S. BLOOMBERG, ESQ.
Attorneys for Plaintiff
One Canalside
125 Main Street
Buffalo, NY 14203

SCHWERZMANN & WISE, P.C.                    KEITH CAUGHLIN, ESQ.
Attorneys for Defendant
220 Sterling Street, P.O. Box 704
Watertown, NY 13601

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Plaintiff Thousand Island Park Corporation ("TIPC" or "plaintiff"), the owner of a

restaurant and store on Wellesley Island known as "The Guzzle," has filed this trademark

infringement and breach of contract action against defendant Mark A. Welser ("Welser"

or "defendant"), the man plaintiff hired to operate the restaurant during the summer 2017

tourist season.

According to TIPC's six-count complaint, Welser improperly associated himself with plaintiff's unregistered trademark in violation of the Lanham Act and related state law when he offered for sale unauthorized merchandise bearing The Guzzle's name and logo.  Plaintiff also alleges defendant breached various aspects of the parties' written agreement.

Welser has moved to dismiss TIPC's Lanham Act claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Plaintiff opposes and has moved under Rule 15 seeking leave to amend its complaint in the event defendant's motion is granted.  Both motions were fully briefed and oral argument was heard on June 6, 2018 in Utica, New York.  Decision was reserved.

## II. <u>BACKGROUND</u>

TIPC owns and operates Thousand Island Park, a family-oriented summer community established nearly 150 years ago on Wellesley Island in Jefferson County, New York (the "Park").  Plaintiff maintains the Park's grounds and provides various services to the yearly guests who lease the 300 or so seasonal cottages located on the island.

Historically, TIPC's operations included an ice cream shop and candy store known as "The Guzzle," which was located in a multi-use commercial building first erected on the island in 1913.  After a fire consumed the original structure in the summer of 2014, plaintiff decided to rebuild and expand its operations to include a deli / restaurant, ice cream shop, candy store, and small grocery store (the "Building").

On April 3, 2017, TIPC entered into a written concession agreement (the "Agreement") with Welser, a resident of nearby Watertown, New York, which granted defendant the right to use the newly reconstructed Building to operate an "Ice Cream Soda Fountain/Lunchroom

and Grocery Store . . . [that] shall be known and advertised as" The Guzzle.  A copy of the Agreement is attached to the complaint as Exhibit A.

In addition to a $6,000 concession fee, the Agreement imposed a variety of obligations on Welser—among other things, it required him to operate The Guzzle between certain dates and for certain hours, to maintain the cleanliness of the restaurant, and to pay for all gas and electricity bills incurred during the summer season.  And while the Agreement contemplated a three-year period, it expressly provided that the parties would sit down and re-negotiate after the first year of operations.

In addition, the Agreement permitted TIPC to terminate the parties' arrangement "in the exercise of its sole discretion" if Welser committed an "egregious, unremedied misstep," created a nuisance "not cured after written notice in 15 days," or was otherwise responsible for any failure to abide by Park rules and regulations that went "unremedied after notice."

TIPC completed construction of the Building just in time for the summer, and Welser opened The Guzzle for Memorial Day Weekend of 2017.  However, in early July plaintiff notified defendant in writing of certain "feedback" from Park residents that plaintiff wanted "addressed as-soon-as [*sic*] possible."  For instance, plaintiff indicated defendant should start selling "milk and other dairy products," offering "full pizzas," and generally doing a better job cleaning the interior and exterior of the Building.  A copy of this request for "Concession Enhancements" is attached to the complaint as Exhibit B.

On July 10, 2017, Welser responded to TIPC's letter with one of his own.  Defendant's letter indicated that he had already moved to accommodate certain requests (e.g., milk, eggs, and bread were now stocked on the shelves) and explained that some of the limitations imposed by the Building's design prevented him from taking immediate action on others

(e.g., the kitchen's current layout made pizza a difficult item to add to the regular

menu).  Defendant's letter suggested that requests in the latter category would be better

addressed during a sit-down meeting between the parties, which was slated to happen at the

end of the first summer season anyway.  A copy of defendant's written response is attached

to the complaint as Exhibit C.

Thereafter, the relationship between the parties soured.  According to TIPC's

complaint, in late August plaintiff received a letter from one of The Guzzle's former female

employees accusing Welser of sexual harassment and other improprieties.  Plaintiff also

alleges defendant failed to pay for electricity and cleaning services, and reacted

"menacing[ly]" when one of plaintiff's representatives approached him to discuss the issue.

After the Park closed for the season, the parties' attorneys engaged in some

back-and-forth communications about whether or not Welser's operation of The Guzzle

during 2017 amounted to a breach of the Agreement.[1]  In the meantime, on December 16

defendant posted on his personal Facebook page a message and accompanying photograph:

> Throw back from summer 2017 for those of you who left your extra
> pictures in our photo booth at the guzzle and who wanted to add to
> our collage.  Tag a friend.  Thanks for a great summer.  We look
> forward to seeing you next year.  Happy holidays.

A copy of Welser's Facebook post is attached to the complaint as Exhibit M.

On December 22, 2017, TIPC's counsel sent Welser's attorney a letter entitled

"Termination of Contract" informing defendant plaintiff had elected to terminate the

---

[1]  When Welser's attorney proposed that the parties negotiate the terms of next season's
arrangement, TIPC's counsel sent a letter accusing defendant of committing 16 different transgressions.  This
correspondence is attached to the complaint as Exhibits E and F.

Agreement "effective January 3, 2018."  A copy of this letter is attached to the complaint as

Exhibit K.

Following receipt of this letter but before the January 3 termination date, Welser

posted on December 25 a message and accompanying photograph on The Guzzle's own

Facebook page:

> Merry Christmas! . . . . Drink in the air of wonder and excitement, and let it fill your heart full of love.  From our family to yours, wishing you the happiest of holidays, and a magical year to come!
>
> Now for something as cool as the chill in the air (which at the moment is 25 degrees!) I am sure you are all looking forward to taking a break from 'shopping'.  However. We have something that's going to catch your eye.  Remember opening weekend, when the chalkboard was filled with the brightly colored, beautiful signatures of people stopping in to say hello?  We promised you something special, and something special we are happy to share!
>
> At the end of the weekend, we snapped a picture.  From that image, we were about to create the AWESOME 18x24 poster you see below!  This LIMITED edition print [ ] is available for $20 if you are local (Watertown/Island area) and $26 if you would like it shipped to you.  The PERFECT addition to your cottage, or 'river room' in your year round residence, and an AMAZING way to commemorate that magical weekend! Can you find YOUR name?
>
> To reserve yours today, please send us a message or email jzarnosky@gmail.com.  We will also post an order form, and one can be emailed upon request.
>
> There are also a limited number of shirts and sweatshirts (both adult and child) left, as well as some pint glasses, water bottles, koozies and sunglasses.  Will post pictures and special holiday pricing!
>
> Make sure to reserve your commemorative 2017 merchandise today!
>
> Back to the festivities!  Enjoy this time with your family and friends, making memories to last a lifetime!
>
> All our love,

Laurel, Mark and Bella

A copy of this Facebook post is attached to the complaint as Exhibit L.

On January 5, 2018, based on these two social media postings, TIPC's counsel sent Welser's attorney a letter accusing defendant of infringing its tradename by offering for sale merchandise using the name The Guzzle without plaintiff's authorization.  According to this letter, defendant's conduct "leads the general public to the mistaken belief that your merchandise is somehow affiliated with, offered, sponsored, or approved by" plaintiff.

The January 5 letter demanded Welser (1) immediately cease and desist his use of the tradename; (2) provide TIPC with "a complete inventory of all product sold which bear the infringing mark," and (3) "file a Certificate of Discontinuance of Assumed Name with the Jefferson County Clerk."  Although the letter further demanded defendant "provide written confirmation" of these tasks within five days, plaintiff alleges defendant did not respond to, or comply with, these demands.  Plaintiff also alleges "[u]pon information and belief, defendant is still using the name The Guzzle in connection with the sale of merchandise."  Compl. ¶ 57.

## III.  LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  Ginsburg v. City of Ithaca, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Although a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief', FED. R. CIV. P. 8(A)(2), more than mere conclusions are required."  Id.  "Indeed, '[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).  "Dismissal is appropriate only where plaintiff has failed to provide

some basis for the allegations that support the elements of his claims." Id.; see also

Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is

plausible on its face").

"When ruling on a motion to dismiss, the court must accept as true all of the factual

allegations contained in the complaint and draw all reasonable inferences in the

non-movant's favor." Morris v. N.Y. State Police, 268 F. Supp. 3d 342, 459 (N.D.N.Y. 2017)

(quoting Faiaz v. Colgate Univ., 64 F. Supp. 3d 336, 344 (N.D.N.Y. 2014)). "In making this

determination, a court generally confines itself to the 'facts stated on the face of the

complaint, . . . documents appended to the complaint or incorporated in the complaint by

reference, and . . . matters of which judicial notice may be taken.'" Id. (quoting Goel v.

Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016)).

## IV.  DISCUSSION

The parties' principal disagreement is over whether the complaint plausibly alleges a

Lanham Act violation for unauthorized use of the name and/or logo for The Guzzle.[2]  Welser

contends the terms of the Agreement did not restrict him from advertising in connection with

his operation of The Guzzle and argues there is no factual support for plaintiff's claim that he

continued to use the tradename after the effective termination date of the Agreement.

TIPC responds that Welser's statements on his and The Guzzle's Facebook page

falsely and misleadingly indicate "he will be operating THE GUZZLE Convenience Store for

the 2018 summer season."  Pl.'s Opp'n at 12.  According to plaintiff, it is consequential that

---

[2]  Because the parties are non-diverse, the jurisdictional basis for suit is the Lanham Act claim for trademark infringement.  In the event this claim should fail, defendant argues plaintiff's state law claims should be dismissed without prejudice under Rule 12(b)(1) for lack of subject matter jurisdiction

defendant made the second Facebook post *after* he received notice of the impending termination of the Agreement.  Finally, in a footnote plaintiff claims defendant's Facebook posts constitute continuing infringement because defendant has not yet removed them from social media.

Welser replies that these posts "look backward to his actual operation" of The Guzzle during the summer of 2017 and are not fairly read as some false or misleading claim about defendant's *future* operation of the restaurant.  Further, defendant insists that he ceased using the tradename on or before the January 3 termination date and that plaintiff's contrary allegation of continued use is wholly conclusory.

"The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'"  Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28-29 (2003) (quoting 15 U.S.C. § 1127).  The relevant provision of the Lanham Act provides that:

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A) (setting forth the standard for unregistered trademarks).

As the Second Circuit has explained, a plaintiff asserting a claim for infringement based on false association must establish that "(1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) 'in connection with the sale . . . or advertising of goods and services,' . . . (5) without the

plaintiff's consent."  1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 407 (2d Cir. 2005) (internal citation omitted).  In addition, a Lanham Act plaintiff must also show that the defendant's use of the mark "is likely to cause confusion . . . as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff]."  Id.

Likelihood of confusion includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection, or identification."  Star Indus., Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 383 (2d Cir. 2005) (citation omitted).  Therefore, "[i]n order to be confused, a consumer need not believe that the owner of the mark actually produced the item and placed it on the market.  The public's belief that the mark's owner sponsored or otherwise approved of the use of the trademark satisfies the confusion requirement."  Id. at 383-84.  Importantly, though, this confusion requirement demands a showing of a "probability of confusion, not a mere possibility," and it must be of a kind likely to affect "numerous ordinary prudent purchasers."  Id. at 383 (citation omitted).

Ordinarily, courts determine whether there is a "likelihood of confusion" by considering the fact-intensive, multi-factor test first laid out in  Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961).  "The eight factors are:  (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market."  Star Indus., Inc., 412 F.3d at 384.

"However, the Polaroid factors are more geared towards comparing two distinct, albeit similar, marks." C=Holdings B.V. v. Asiarim Corp., 992 F. Supp. 2d 223, 241 (S.D.N.Y. 2013) (citation omitted).[3]  As a result, consideration of the so-called Polaroid factors is unnecessary in certain situations, such as "[w]hen an ex-licensee continues to use a mark after its license expires."  Id. (quoting L & L Wings, Inc. v. Marco-Destin, Inc., 676 F. Supp. 2d 129, 188 (S.D.N.Y. 2009).  In circumstances like those, "confusion is almost inevitable because consumers have already associated the formerly licensed infringer with the trademark owner," L & L Wings, Inc., 676 F. Supp. 2d at 188, and therefore "consumer confusion is presumed," C=Holdings B.V., 992 F. Supp. 2d at 241.

Measured against this body of case law, TIPC's Lanham Act claim must be dismissed.  To be sure, the improper use of another's mark in connection with marketing or sales on a social media platform can give rise to a viable Lanham Act claim.  See, e.g., Van Praagh v. Gratton, 993 F. Supp. 2d 293, 303 (E.D.N.Y. 2014) (denying motion to dismiss where defendant used allegedly infringing name in various Facebook posts).

At the same time, however, courts have repeatedly cautioned against permitting parties to misuse the Lanham Act by making a federal case out of an otherwise garden-variety contract dispute.  See, e.g., Stratta v. George Duke Enters., Inc., 1997 WL 282250 at *5 (S.D.N.Y. May 27, 1997) (Sotomayor, J.) ("The Lanham Act should not be used to transform a breach of contract dispute into a federal cause of action.").

This is essentially what TIPC attempted to accomplish in this case.  At the outset, plaintiff's opposition memorandum suggests that the language of the disputed postings

---

[3] "Courts differ as to whether it is even appropriate to consider the Polaroid factors on a motion[ ] to dismiss." Roberts v. Bliss, 229 F. Supp. 3d 240, 253 n.4 (S.D.N.Y. 2017) (collecting cases).

should be disregarded, at least for purposes of resolving Welser's motion to dismiss the Lanham Act claim.  See, e.g., Pl.'s Opp'n at 14-15 (characterizing as "unsupported" defendant's assertion that "[h]e also offered left-over commemorative 2017 merchandise such as shirts, pint glasses and water bottles for sale").

This suggestion is rejected, since the example set forth above is drawn directly from the actual text of Exhibit L to the complaint.  Of course, TIPC was not required to attach this (or any other) exhibit to its pleading.  Plaintiff could have chosen instead to base this action on just the allegations recited in its complaint.  But where, as here, a party chooses to attach documents to a pleading and relies on them in bringing suit, consideration of those exhibits become fair game on a motion to dismiss.

Turning to this material, the two social media posts in question were made on December 16 and 25, and both occurred before the Agreement's January 3 termination date.[4]  At oral argument, TIPC's counsel invited the Court to infer the contract may have terminated at an earlier juncture, such as on December 22 when plaintiff transmitted to Welser's counsel the letter entitled "Termination of Contract."  Yet this letter, attached as Exhibit K to the complaint, clearly states plaintiff's intention to terminate the Agreement "effective January 3, 2018."  There is no reason to conclude plaintiff meant anything other than what it specifically chose to say in that correspondence.

Further, a review of the Agreement gives force to Welser's contention that it contemplates no limitation on the time, place, form, or extent of any advertising that might occur during its effective period.  To the contrary, the Agreement includes only broad,

---

[4]  TIPC argues Welser's failure to remove these two posts from Facebook constitutes continuing infringement.  That argument, made in a footnote without any supporting case law, is rejected.

unrestricted language permitting defendant to operate a facility that shall be "known and advertised as" The Guzzle.  Although it does not provide for any formal licensing or advertising arrangement, neither does it explicitly attempt to control defendant's usage of the tradename.

Even assuming otherwise, it is implausible that reasonably prudent consumers were likely to be confused by the two posts that TIPC finds so vexatious.  The December 16 post on Welser's own, personal Facebook page is at best a backward-looking, generalized expression of gratitude toward those customers who patronized The Guzzle during the summer 2017 season.

To accept TIPC's assertion that this first post plausibly violated the Lanham Act; i.e., that this post probably confused numerous ordinary, prudent purchasers into forming the false impression defendant would be operating The Guzzle in 2018 because defendant stated that he "look[ed] forward to seeing [customers] next year," risks transforming a whole range of hopeful comments made during failed business negotiations into Lanham Act claims.

The second posting presents a closer question simply by virtue of the fact that it purports to offer for sale "*commemorative* 2017 merchandise" rather than just expressing gratitude to The Guzzle's summer patrons.  But neither TIPC's complaint nor the attached exhibits offer any plausible *factual* basis on which to infer that Welser offered for sale any merchandise beyond the January 3 termination date.  Indeed, nowhere is it even alleged that any transactions of any merchandise actually occurred.  See Compl. ¶¶ 53-58.  And upon questioning at oral argument, plaintiff's counsel was unable to offer any additional factual material that might be added to the complaint to shore up these deficiencies.

In essence, TIPC's Lanham Act claim is premised on a single social media post made before the Agreement's effective end date joined with a conclusory assertion that Welser might still be up to no good.  Compl. ¶ 57.  These accusations do not give rise to a plausible Lanham Act claim.  Iqbal, 556 U.S. at 679 ("[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific tasks that requires the reviewing court to draw on its experience and common sense.").  Accordingly, defendant's motion to dismiss will be granted.

### B.  TIPC's Cross-Motion to Amend

TIPC has cross-moved to amend its complaint in the event Welser's motion to dismiss is granted.  According to plaintiff's counsel, plaintiff "believes it will be able to correct such defect[s] by adding additional factual allegations in support of its Federal Trademark Claim, as necessary."  Bloomberg Decl. ¶ 4.

As an initial matter, TIPC's request runs afoul of at least two different Local Rules.  First, Local Rule 7.1(c) requires that where, as here, "a party makes a cross-motion, it must join its cross-motion brief with its opposition brief."  Indeed, Local Rule 7.1(c) explicitly states that "[a] separate brief in opposition to the original motion is not permissible."

TIPC ignored this command.  For whatever reason, plaintiff instead filed the same full-length brief twice:  once in opposition to defendant's motion to dismiss (ECF No. 16) and once in support of a filing that it has labeled a "cross-motion" to amend (ECF No. 17).

Second, this cross-motion violates Local Rule 7.1(a)(4), which requires the moving party to "attach an unsigned copy of the proposed amended pleading to its motion papers."  TIPC's attorney's affidavit attached to the motion recognizes that this is ordinarily a requirement imposed when a party files a cross-motion to amend.  Bloomberg Decl. ¶ 6.  And

Welser's counsel was quick to point out in his own opposition that the Local Rules do not contemplate a pleading that is "just available on request."  Caughlin Aff. ¶ 4.  Yet to date, plaintiff has not submitted any revised pleading for consideration.

"Without doubt, this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)."  Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006) (per curiam).  After all, Rule 15 instructs that "[t]he court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2); see also Foman v. Davis, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").

Nevertheless, TIPC's motion for leave to amend will be denied.  More problematic than plaintiff's non-compliance with this District's various Local Rules is the ongoing absence of any indication as to how plaintiff might cure the defects in its Lanham Act claim.[5]  As discussed above, nothing in the litany of exhibits attached to plaintiff's complaint contains any hint of what might be added to the pleading to cure the various identified defects.  And when pressed at oral argument about what, if anything, beyond the two social media postings might be included if leave to amend were granted, plaintiff's counsel was unable to offer anything of substance.  See, e.g., Bartlett v. Honeywell Int'l Inc., –F. App'x–, 2018 WL 2383534 (2d Cir.

---

[5] In Cresci v. Mohawk Vall. Comm. Coll., 693 F. App'x 21, 25 (2d Cir. 2017) (summary order), a panel of the Second Circuit reversed the denial of the plaintiff's perfunctory request to amend his pleading for failure to comply with this District's Local Rule 7.1(a)(4).  The Cresci panel reasoned that the plaintiff, who had not filed a formal request to amend before the district court, is not obligated to seek leave to replead until after a district court gives notice of the complaint's deficiencies.  Id.  However, Cresci does not speak to the precise issue here:  what to do when a counseled plaintiff elects to file a *formal* cross-motion to amend (to which the defendant properly believes himself obligated to respond), but then files a supporting brief that adds nothing to the analysis?

May 25, 2018) (summary order) (affirming district court's denial of leave to amend where plaintiffs failed to submit a proposed amended pleading or otherwise indicate how they could cure the pleading's deficiencies).  Accordingly, plaintiff's cross-motion will be denied.

## V.  CONCLUSION

TIPC is free to pursue its claim of $4,960.13 in damages arising from Welser's alleged breach of the Agreement in an appropriate state forum.  See 28 U.S.C. § 1367(c)(3).

Therefore, it is

ORDERED that

1.  Welser's motion to dismiss is GRANTED;

2.  TIPC's cross-motion to amend is DENIED;

3.  TIPC's Lanham Act claim (First Cause of Action) is DISMISSED; and

4.  TIPC's remaining claims are DISMISSED without prejudice.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  June 14, 2018
        Utica, New York.